B. SPRINGFIELD *et al. v.* M. L. JACKSON *et al.*

SALE OF REALTY. *Life tenant and remainderman. Appeal. Revivor.* S sold a tract of land to J, in which, under a will, his wife had a life estate, and, by the terms of the will, upon her death vested in her son. S, his wife and son, then of age, executed a title bond and afterwards a deed. Upon proper pleadings, it was held by the chancellor that the sale was void as to the wife. An appeal was taken, and before hearing the wife died. *Held:* That the sale was void as to wife, but she having died pending the appeal, the son was bound by the deed, and the sale was sustained.

FROM FAYETTE.

Appeal from . the Chancery Court at Somerville. H. J. LIVINGSTON, Ch.

JONES & GALLOWAY and STAINBACK & RIDDICK for complainants.

H. C. MOORMAN for defendants.

TURNEY, J., delivered the opinion of the court.

In April, 1846, Boswell B. DeGraffenreid made his will. By the third clause it is provided: "There are now in the possession of my daughter, Elizabeth G., and her husband, Blount Springfield, ten slaves as a loan for the present, and I contemplate shortly to add two more slaves, making in all twelve, and settle them, with their increase from this date, and also with all that part of the Green B. Hamblett tract of land exclusive of the 30 acres assigned to my son Henry, upon trustees in trust to apply the annual proceeds of the labor of said slaves and use of said land to the support, from year to year, of my said daughter Elizabeth, and such children as she may have, independent of and not subject (the property or its proceeds) to the control, debts or contracts of her present or any future husband, and at her decease the same to go to her child or children that she may have, and the descendants of such, the descendants taking the part the parent would have done if living; and in default of such living child or children, or descendants of such, at her death, the property so given to her use to revert to my estate and be divided equally; that is to say, one-fifth part to my son Henry, one-fifth each to each of my daughters, and the remaining one-fifth part to my said grandsons Edward and Francis Long, or either; to Henry, his part in absolute title, and the remaining four-fifths to the trustees in this will

named for the others, and upon the like terms and limitations and conditions as the other property specified for their benefit respectively. And in case of my decease before making such deed of gift, then I vest the said land and ten slaves and two others, which two I leave it to the discretion of my executor to select out of my estate, in the trustees hereinafter named, for others of my children, to-wit: Henry E. DeGraffenreid, E. T. Evans, L. H. Coe, Blount Springfield and Peter Bland, to be by them held in trust for the purposes stated."

In the last clause it is provided: "Whereas, in the foregoing I will about 306 acres of land to the use of my daughter Elizabeth, and also direct that one-fourth part of my home tract of land be allotted off in severalty to the use of such of my said daughters as first arrive at twenty-one years of age or marries, I have reflected that it may be better for them, and therefore authorize the trustees of each, if in the exercise of a sound discretion they may deem it best, to sell the land allotted to use of either, and apply the proceeds arising from such sale to purchase of other lands, which, when so purchased, is in all respects to stand substituted for the original."

B. B. DeGraffenreid died in 1856. No one of the appointees ever qualified, except the son.

On August 10, 1869, Blount Springfield contracted to sell to M. L. Jackson 846 acres of land. A title bond, signed by Blount Springfield and his wife, Elizabeth G., and their only child, Baker C. Spring-

field, and who was of full age, was executed. In that bond the land is described as "846 acres, more or less, composed of one tract of 289¾ acres, deeded to me by Wm. Harris, one tract of 156 acres deeded to me by R. Lemons, one tract of 300 acres known as the Green B. Hamblett tract, and one tract of 37 acres deeded to me by A. D. Steinbach." The bond proceeds: "On the following payments: $5,000 to be paid cash on the 25th of December, 1869, at which time possession is to be delivered and given; $5,000 December 25, 1870, and $5,000 December 25, 1871. Now, if on the payment of the said several sums of money, I should make, or cause to be made, a general warrantee deed to said land, then this obligation to be void," etc.

The two notes first falling due have been paid. On the 4th of August, 1871, Blount Springfield executed a deed for 546 acres of the land, reciting payment of the purchase money. Springfield, wife and son join in a deed for the 300 acres, retaining a lien for the purchase money, which is stated to be evidenced by the last note before described for $5,000. The notes were all payable to Blount Springfield, the husband and father. The title bond was filed for registration on the 11th of February, 1870, and registered on the 12th of March, 1875. The deeds were not registered until after the commencement of this suit.

On the 17th of March, 1871, complainant, Thos. G. Neal, loaned Blount Springfield $1,200, and on the 12th of April, 1871, he loaned him about $1,823,

taking his notes. The $5,000 of Jackson last falling due was pledged as collateral for these sums at time of borrowing. On the 18th of February, 1875, the balance of the note after Neal shall be paid was transferred by B. Springfield to Henderson Owen, surviving partner, etc.. On the 27th of January, 1875, Jackson made a deed of trust to E. J. Tucker on the 546 acres of land, to secure certain creditors. On the 15th of March, 1875, the original bill was filed by Blount Springfield for himself and Neal and Owen, and by Baker C. and Elizabeth G. Springfield, to enforce the vendor's lien on the entire tract for the payment of the $5,000 note.

Jackson by his answer admits the purchase and his readiness to perform, if the title to the 300 acre tract is good, or can be made so. He makes his answer a cross-bill.

At least five-sixths of the record is made of bills, cross-bills and answers.

The first question presented is, did Blount Springfield have the power under the will to sell and reinvest? We think with the chancellor that he did not, and that the sale was void as to the wife. Since the appeal to this court, however, Mrs. Springfield has died, and the title upon her death by the terms of the will vested in her only son, Baker C. Springfield, who was *sui juris* at the time he joined in the title bond and deed, was an attorney and the draftsman of many of the papers, especially the pleadings of himself, his father and mother, in this cause, in which he claims the sale was a very ad-

Springfield *v.* Jackson.

vantageous one; that the father has re-invested of his own means largely more than the price of the Hamblett tract, in other better lands, and which are yielding a much larger profit. As he covenanted for title with a full understanding of all the circumstances, his deed and covenant will be held to convey the title cast upon him by the falling in of the life estate. In the case he presents himself as counsel and witness, changing base in either and both as interest may suggest to him. While his course presents him in no very favorable light, and while we can give him but little credit, it is evident from all the facts, including his bills, answers and deposition, that he was mainly instrumental in getting up and keeping up this litigation, as well as in promoting the sale of the land. He must not now be permitted to take advantage of his own wrong and frauds upon others.

It appears from the answer of Mrs. Springfield, her husband and son, that the profits from the reinvestment are greatly superior to those of the land devised under the will of her father. A strong *prima facie* case is made for ratification, if presented in a bill for the purpose. From their own standpoint we are forced to conclude that she received and enjoyed the use and rents of the reinvestment, receiving the full support contemplated by the will, and is thereby estopped to claim rents for the 300 acre tract for the time since Jackson became a bankrupt in 1878. But for her resistance to the cross-bill of Jackson, and concealment of what she in her later pleadings

charges to be the fraud of her husband she would have been restored to her rights in the land under the will of her father long before the bankruptcy of Jackson. Her coverture will not protect her from the consequences of her fraud upon the rights of Jackson. While, if she were living, we might be constrained to restore to her the land, we would not, under the circumstances, allow an account for rents.

Neal claims that he is entitled to subject the entire tract of 846 acres to the payment of his debts. As we have seen from the title bond, the sale was an entirety; he was the holder of the note before the registration of the deeds; when he took the note it was governed by the contract in the title bond; he was not consenting to the deeds, nor had notice of their execution, and is not affected by them, but is entitled to the terms of the original contract, which secured a lien upon the entire tract for the full amount of the purchase money. The transfer to Owen was made after he had notice of the existence of the deeds to Jackson, and after Jackson's deed of trust for the benefit of other creditors, and he must be postponed to them as to the 546 acres. The 846 acres will be sold in two parcels, or in more if practicable and desired by the deferred creditors, and Neal first paid out of the proceeds; then the trustee, Tucker, out of any excess in the proceeds of the 546 acres, and afterwards, if there is a balance, it may be applied to Owen's debt.

The unadjudged costs will be paid out of the fund before any of the debts.

The 300 acre tract will be sold first, Neal having the security of the entire tract, and the creditors attempted to be secured in the trust deed being limited to the 546 acre tract, the latter should have the benefit of such sale as will be likely to produce the best sale, especially as no injury can result to the holder of the prior lien.

The decree will be modified as indicated.